# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ANDREW BROWDER, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | C.A. No.: 2:14-cv-4135-PMD |
| v. ) ) | **ORDER** |
| PENINSULA GRILL ASSOCIATES, LLC ) d/b/a HANK'S SEAFOOD ) RESTAURANT and HENRY "HANK" L. ) HOLLIDAY, III, individually, ) ) | |
| Defendants. ) ) | |

This matter is before the Court on Defendants Peninsula Grill Associates, LLC d/b/a Hanks's Seafood Restaurant ("Hank's Seafood") and Henry "Hank" L. Holliday, III's ("Holliday") (collectively "Defendants") Motion to Strike, or in the Alternative, Motion to Dismiss Nicholas Clement's Untimely Consent (ECF No. 40) ("Motion"). Plaintiff Andrew Browder ("Plaintiff") has filed a Memorandum in Opposition to Defendants' Motion (ECF No. 43). For the reasons set forth herein, the Court denies Defendants' Motion.

## BACKGROUND

On October 23, 2014, Plaintiff commenced this lawsuit, on behalf of himself and other similarly situated current or former employees of Hank's Seafood, seeking, *inter alia*, unpaid overtime compensation and minimum wages pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).[1] In his Original Complaint, Plaintiff asserted two separate causes of action under the FLSA and one cause of action for violation of

---
1. Plaintiff's Complaint was accompanied by two opt-in consent forms executed by Andrew Browder and Yana Keown. On February 26, 2015, Plaintiff's counsel filed a Notice of Joinder, as well as an opt-in consent form, for Randy Fleuriet.

the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 *et seq.* ("SCPWA") against Defendants.  Plaintiff alleges that Defendants paid him and other similarly situated current and former nonexempt employees less than the statutory minimum wage by improperly claiming a tip credit while utilizing an invalid "tip pool" in violation of 29 U.S.C. §§ 203(m), 206.  Plaintiff also asserts that Defendants failed to pay Plaintiff and those similarly situated the proper overtime wage in violation of 29 U.S.C. § 207.  As to the SCPWA, Plaintiff's Original Complaint asserted that monies Plaintiff and those similarly situated received as tips, either directly or via the tip pool, were "wages," as that term is defined by the SCPWA, and that Defendants willfully made unauthorized and illegal deductions from those wages without providing the requisite notice.

On November 14, 2014, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("First Motion to Dismiss").  Shortly thereafter, on November 25, 2014, Plaintiff filed an Amended Complaint.  Accordingly, the Court issued a Text Order on December 3, 2014, finding that Plaintiff's Amended Complaint rendered moot Defendants' First Motion to Dismiss.  Defendants filed another Motion to Dismiss on December 15, 2014 ("Second Motion to Dismiss").  Plaintiff filed a Response in Opposition to Defendants' Second Motion to Dismiss on January 20, 2015.

The Parties subsequently informed the Court that they were attempting to resolve the Second Motion to Dismiss.  On February 23, 2015, the Parties filed a Joint Motion pursuant to Rule 16 of the Federal Rules of Civil Procedure.  By way of their Joint Motion, the Parties notified the Court that they had "negotiated a compromise in which each is giving up certain rights, but each believes it is best for them in proceeding with this action." (Joint Mot. 1, ECF No. 16).  Accordingly, the Parties requested "the entry of an Order . . . to stipulate to certain

issues in an effort to streamline this action." (*Id.*). In short, Plaintiff agreed to dismiss his SCPWA cause of action and Defendants consented to the availability of certain remedies. The Court granted the Joint Motion on February 25, 2015, and adopted the Parties' proposed consent order. Following entry of the February 25, 2015 Order, Defendants withdrew their Second Motion to Dismiss and, on March 9, 2015, filed an Answer to Plaintiff's Amended Complaint.

On March 25, 2015, Plaintiff filed, with Defendants' consent, a Seconded Amended Complaint. By way of the Second Amended Complaint, Plaintiff sought to clarify matters by deleting the SCPWA claim and all corresponding references to a putative class action under Rule 23 of the Federal Rules of Civil Procedure. Additionally, Plaintiff attempted to more clearly identify which Defendant was the "employer" under the FLSA. Pursuant to the Parties' agreement, Plaintiff's Second Amended Complaint related back to the date Plaintiff filed his Original Complaint. Defendants filed their Answer to Plaintiff's Second Amended Complaint on April 10, 2015.

On April 16, 2015, the Parties filed a Consent Motion for Conditional Collective Action Certification and to Authorize Notice to Putative Class Members ("Consent Motion"). By way of their Consent Motion, the Parties sought an order from the Court conditionally certifying this matter as a collective action under the FLSA, with the class defined as: "All current and former employees of Defendants at anytime from three years prior to the date of the Court granting this Motion to the present ('Time Period') who were paid a direct, or hourly, rate less than the statutory minimum wage of seven and 25/100 dollars ($7.25) per hour." (Consent Mot. 2, ECF No. 32). Additionally, the Parties requested that the Court authorize notice to potential plaintiffs and putative class members and approve the Parties' agreed-upon process for facilitating and distributing such notice. On April 17, 2015, the Court granted the Parties' Consent Motion. In

doing so, the Court authorized the Parties to provide, via a third-party administrator, putative class members with notice of the opportunity to opt-in to this collective action. Pursuant to the Court's April 17, 2015 Order, potential plaintiffs were given an agreed-upon forty-five-day period to opt-in to the conditionally certified collective action by filing the requisite consent to join form ("Consent Form").

On May 27, 2015, Plaintiff's counsel filed a Consent Form for Brian Walker. On June 11, 2015, shortly after the expiration of the notice period, Plaintiff's counsel filed a Consent Form executed by Nicholas Clement ("Clement"). Accordingly, Defendants filed the instant Motion on June 22, 2015, asking the Court to strike Clement's untimely filed Consent Form. On July 9, 2015, Plaintiff filed a Memorandum in Opposition to Defendants' Motion. Plaintiff's Memorandum in Opposition was accompanied by an affidavit from Mr. Clement and an affidavit from Plaintiff's counsel, Bruce Miller. Therefore, this matter has been fully briefed and is now ripe for consideration.

## **DISCUSSION**

Under the FLSA, a claim for unpaid minimum wages, unpaid overtime compensation, or liquidated damages "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In the context of a collective action filed pursuant to the FLSA, the action is deemed "commenced" as to an individual claimant:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

4

29 U.S.C. § 256. While the FLSA outlines the procedure for individuals to join a collective action as potential plaintiffs under § 256(b), it does not specify when the potential plaintiffs must opt-in to the action. *E.g.*, *Heaps v. Safelite Solutions, LLC*, No. 2:10-CV-729, 2011 WL 6749053, at *1–2 (S.D. Ohio Dec. 22, 2011); *see* 29 U.S.C. §§ 216(b), 255, 256. Instead, opt-in deadlines are set by the trial court. Further, the FLSA does not set forth the standard under which a trial court should consider whether potential plaintiffs may join a collective action by filing the requisite opt-in consent forms after the prescribed deadline. *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009).

As this Court recently noted in *Regan v. City of Charleston, S.C.*, No. 2:13-CV-3046-PMD, 2015 WL 1299967, at *2 (D.S.C. Mar. 23, 2015), those district courts that have addressed this issue have taken a variety of different approaches.[2] Indeed, "the caselaw on this issue is wide-ranging." *Ruggles*, 687 F. Supp. 2d at 37. However, the majority of district courts that have been confronted with this question "have generally decided the question by balancing various combinations of the following factors: (1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Id.* (collecting cases). Having carefully considered and balanced each of these factors, the Court concludes that allowing Clement to join this action despite his failure to timely file the requisite Consent Form is appropriate under the circumstances of this case.

First, the Court will consider whether good cause exists for Clement's late submission. In their Motion, Defendants ask the Court to strike Clement's Consent Form by arguing that late

---

2.   Aside from recognizing, in an unpublished decision, that such matters are committed to the sound discretion of the district court, *see In re Food Lion, Inc.*, 151 F.3d 1029, at *11 (4th Cir. June 4, 1998) (per curiam); *see also Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (acknowledging that in collective actions under the FLSA district courts are empowered to "set[] cutoff dates to expedite disposition of the action"), the Fourth Circuit has offered little, if any, guidance on this issue.

opt-in forms should not be accepted absent exceptional circumstances and that such exceptional circumstances are not present here.[3] In response, Plaintiff asserts that there is good cause for the delayed filing of Clement's Consent Form. According to his Affidavit, Clement did not receive notice of this lawsuit and his right to opt-in but instead "first heard of this action while working at Hank's [Seafood]." (Clement Aff. 1, ECF No. 43-1).[4] Citing instances or incidents of what he describes as "intimidation" by management related to this lawsuit, Clement states that after hearing about the action "I decided that I wanted to keep my job at Hank's [Seafood] so I would not join the lawsuit." (*Id.* ¶ 6). Having been recently terminated by Hank's Seafood and no longer faced with such incidents of purported intimidation or fearing reprisal, Clement contacted Plaintiff's counsel on June 10, 2015, to inquire about joining this lawsuit or pursuing a separate action. Because it is undisputed that Clement did not receive notice of this lawsuit and because Plaintiff has demonstrated that Clement feared he would lose his job if he joined this action or sought additional information regarding the matter, Plaintiff has satisfied the Court that good cause exists for the untimely filed Consent Form.

Second, in deciding whether to allow the late submission, the Court should consider any prejudice to Defendants. In their Motion, Defendants contend that Clement's delayed joinder

---

3. For obvious and understandable reasons, Defendants' Motion does not prove a negative or, more specifically, demonstrate the absence of "good cause" for Clement's untimely joinder. Instead, Defendants primarily take issue with Plaintiff's counsel's filing of Clement's Consent Form without first seeking the Court's leave and without offering any stated justification or reason. Although this Court does not wish to encourage or condone such unilateral action by Plaintiff's counsel in all circumstances, it is worth noting that Plaintiff's counsel indicates in his Affidavit that he notified Defendants of Clement's forthcoming Consent Form and sought their consent to the delayed filing.

4. Although he reports having heard from co-workers that they had received a notice about joining the instant lawsuit, Clement insists that he never received any such notice. To that end, Clement states that after moving approximately two years ago, he tried several times to update his address with his now-former employer but that he never received anything from Hank's Seafood at his new address. Clement also notes that Hank's Seafood employees "have always been given our W-2s for our taxes while at work." (*Id.* ¶ 9). This alone is relevant to, if not probative of, the good-cause inquiry. *See Kimbrel v. D.E.A. Corp.*, No. 3:14-CV-161-TAV-CCS, 2015 WL 1396898, at *3 (E.D. Tenn. Mar. 26, 2015) ("[T]he failure to provide an up-to-date address for [potential plaintiff] supports finding good cause for the delay."). "While the Court is not prepared to find that an employer is charged with constantly updating its records to reflect a change of address, the Defendant has failed to demonstrate what diligence it exercised to ensure that the addresses it provided for current employers [sic] were current." *Id.*

would be prejudicial because they need to know who is asserting claims against them so that they can proceed with discovery and prepare a defense.  As noted by Plaintiff, at the time Defendants filed the instant Motion, the Parties have not taken any depositions and Plaintiff has granted Defendants an extension of time to respond to Plaintiff's initial written discovery.  Moreover, the Court again notes that Plaintiff's counsel alerted Defendants to the fact that Clement wished to opt-in to the present action.  Thus, Clement's addition will not disrupt the discovery process. *See Regan*, 2015 WL 1299967, at *3 (citing *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758, 2014 WL 494571, at *2 (N.D. Ohio Feb. 6, 2014); *Ruggles*, 687 F. Supp. 2d at 37); *see also Heaps*, 2011 WL 6749053, at *2 ("[A]ll of these consent notices were filed with the Court within a few months after the deadline and the majority of them within one month, not presenting any unfair surprise or requiring that Defendants take any additional steps to defend this action.  Thus, Defendant has not been prejudiced by a significant delay and the addition of these opt-in plaintiffs should not hamper the discovery process already underway.").  Nevertheless, Plaintiff asserts that "based on Clement's work history, it 'appears' that his potential damages are not large compared to the other Plaintiffs."  (Pl.'s Mem. in Opp. 3).  Therefore, the Court concludes that under the circumstances and procedural posture of this case, Defendants are not prejudiced by the brief delay.

Third, and related to the prejudice consideration, is the question of how long after the deadline Plaintiff filed Clement's Consent Form.  As noted above, Plaintiff filed Clement's Consent Form within ten days of the Court's opt-in deadline.  Although Defendants have identified two cases in which joinder was not allowed after opt-in consent forms were filed even closer to the applicable deadline, the Court is not persuaded by the cases cited and notes that they are most certainly in the minority.  Indeed, in *Regan*, this Court allowed joinder where five

7

putative plaintiffs sought to opt-in approximately one month after the deadline.  2015 WL 1299967, at *3.  In light of the brief, ten-day delay in the present case—a delay for which Plaintiff has offered good cause—the Court finds that this factor also weighs in favor of allowing Clement's late submission.

Fourth, the Court will evaluate and address the interests of judicial economy.  Defendants' only argument in this regard is that they would be prejudiced by the delay.  Having already addressed and disposed of such concerns, the Court notes that even if it were to grant Defendants' Motion, Clement may still be able to institute a separate action.  Thus, the consequences of denying joinder would likely be the same, albeit perhaps in the context of a separate lawsuit.  Further, it is certainly foreseeable that any such separate action ultimately could be consolidated with the case *sub judice*.  *See Abubakar v. Cnty. of Solano*, No. Civ. S-06-2268-LKK/EFB, 2008 WL 550117, at *2 (E.D. Cal. Feb. 27, 2008) (noting the likelihood that separate actions alleging identical claims would be consolidated under Rule 42(a) of the Federal Rules of Civil Procedure).  Although Defendants insist that the interests of justice would not be disserved by excluding Clement's Consent Form, the Court notes that "there is little economy in spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future."  *Ruggles*, 687 F. Supp. 2d at 38.  Accordingly, having considered, on balance, the interests of judicial economy, the Court finds that such interests are best served by allowing Clement to join the pending action.

Fifth, the Court has considered the circumstances of this case in view of the FLSA's statutory scheme and concludes that allowing Clement to opt-in to the pending collective action is consistent with the FLSA's remedial scheme and purpose.  *See Kelley v. Alamo*, 964 F.2d 747, 749–50 (8th Cir. 1992) ("The FLSA should be given a broad reading, in favor of coverage.  It is

8

a remedial statute that 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.' A generous reading, in favor of those whom [C]ongress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines." (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959))). This factor certainly weighs in favor of allowing untimely joinder where, as here, a putative plaintiff asserts that intimidation by the employer–defendant caused or contributed to the delay. *Cf. Fogarty v. Boles*, 121 F.3d 886, 891 (3d Cir. 1997) (noting that the FLSA and the National Labor Relations Act "are aimed at eliminating an atmosphere of intimidation").

In sum, applying and balancing the aforementioned factors, the Court concludes that allowing Clement to join this collective action is both warranted and appropriate under the circumstances of this case. Therefore, the Court accepts Clement's Consent Form "as filed as of the date that [it was] submitted to the Court." *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 145 (D.D.C. 2011); *see* 29 U.S.C. § 256(b) (providing that a FLSA collective action is "commenced" as to an individual claimant "on the subsequent date on which such written consent is filed in the court in which the action was commenced"). Accordingly, the Court denies Defendants' Motion.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motion to Strike, or in the Alternative, Motion to Dismiss Nicholas Clement's Untimely Consent is **DENIED**.

**AND IT IS SO ORDERED.**

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**July 15, 2015**
**Charleston, South Carolina**